UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Daniel DiIeso and Annette DiIeso

        Plaintiffs,

    v.

Hill International, Inc.,

        Defendant.
_____

Hill International, Inc.,

        Third−Party Plaintiff,

    v.

Olson's Creative Landscaping Corp.,

        Third−Party Defendant.

**MEMORANDUM & ORDER**
12 CV 4214 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Daniel DiIeso and Annette DiIeso[1] initiated this action against defendant Hill International Inc. ("Hill") to recover for injuries sustained by Daniel DiIeso ("DiIeso") while working at a construction site that was part of a New York City streetscape project (the "Project").[2] Plaintiffs assert claims under New York Labor Law §§ 200, 240 (1), and 241 (6), and for common law negligence. (Dkt. 1−2 ¶ 29.) Annette DiIeso, DiIeso's spouse, also brings a claim for loss of consortium based on DiIeso's injuries. (*Id.* ¶¶ 32−33.) Hill, in turn,

---

[1] The docket erroneously spells Plaintiffs' last name as "DiIeso." The Court uses the spelling reflected in the parties' filings.

[2] Plaintiffs filed suit in the Supreme Court of Kings County on or about July 19, 2012. (Dkt. 1 ¶ 1.) Hill then removed the case to this Court based on federal diversity jurisdiction. (*Id.*)

commenced a third−party action against Olson Creative Landscaping ("Olson") for indemnification pursuant to Olson's contract with the City of New York Department of Parks (the "City") relating to the Project. (Dkt. 20.)

Presently before the Court are Hill's and Olson's motions for summary judgment. (Dkts. 56, 63.) Since Plaintiffs have withdrawn their claims under Labor Law §§ 200 and 241(6), the sole statutory claim that remains to be addressed is under Labor Law § 240 (1). (*See* Minute Orders dated Jun. 23, 2014 & Oct. 23, 2014.) For the reasons set forth below, the Court grants Hill's motion for summary judgment on Plaintiffs' § 240 (1) claim and any outstanding common law claims. Hill's indemnification claim against Olson, accordingly, is dismissed as moot.

## *BACKGROUND*

As Plaintiffs have failed to properly counter the facts set forth in Hill's Local Civil Rule 56.1 Statement (*see* Dkts. 63−1 ("Hill St."); 54−3 ("Pl. St.")), the Court deems as admitted all supported facts in Hill's 56.1 Statement.[3] In any event, the facts detailed below are generally undisputed and are largely reiterated in Plaintiff's 56.1 Statement.[4]

In June 2010, the City sought bidders for construction and landscaping work to be performed throughout the boroughs of Queens, Staten Island, and Brooklyn as part of the Project. (Hill St. ¶¶ 1−2; Pl. St. ¶ 1.) While awaiting bids from prospective contractors, the City sought out a construction consultant to ensure that the contractor eventually selected would

---

[3] Where a party opposing a motion for summary judgment fails to controvert a fact properly set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted. *United States v. Kadoch*, 96 CV 4720, 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (affirming grant of summary judgment based on plaintiff's failure to submit a statement pursuant to Rule 56.1). The Court, however, has the discretion to overlook a party's failure to comply with local rules, and instead look to the underlying evidence submitted by the parties. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).

[4] Olson's 56.1 Response admits each of the facts set forth in Hill's Statement. (Dkt. 61.)

perform the work on the Project according to specifications. (Hill St. ¶¶ 3, 6; Pl. St. ¶¶ 2, 12, 33.) Accordingly, on November 12, 2010, the City contracted with Hill to provide "Construction Project Management Services," in connection with the Project. (Pl. St. ¶¶ 2, 5; *see* Dkt. 50−3 ("Hill Contract") at HI000016.) The scope of Hill's work, as set forth under the Hill Contract, included pre−construction review and estimating services, supervision and inspection services, contract administration, technical support, administrative support services, and post−construction and contract closeout services. (Hill St. ¶ 4; Pl. St. ¶ 3; Hill Contract at HI000020.) The Hill Contract specified that "[i]t is the responsibility of the construction contractor, and not the responsibility of the Consultant [Hill], to determine the Means and Methods of Construction, as defined in . . . the construction contract documents." (Hill Contract at HI000026, II−1, § D.)

On January 19, 2011, the City entered into a contract with Olson to perform construction and landscaping work on the Project. (Hill St. ¶ 8; Pl. St. ¶ 20.) Among the pertinent provisions in Olson's contract with the City are those governing the "Means and Methods of Construction." (Hill St. ¶ 10; Dkt. 50−7 ("Olson Contract") at 50.) The Olson Contract states that "[u]nless otherwise expressly provided . . . the **Means and Methods of Construction** shall be such as the **Contractor** [Olson] may choose." (Hill St. ¶ 11; Olson Contract at 50 (emphasis in original).) The term "Means and Methods of Construction" is specifically defined in the Olson Contract to "mean the labor, materials, temporary structures, tools, plant, and construction equipment, and the manner and time of their use, necessary to accomplish the result intended by this Contract." (Hill St. ¶ 12; Olson Contract at 49.) Olson employed multiple individuals to do the construction and landscaping work over the course of the Project, including DiIeso. (Hill St. ¶ 14; Pl. St. ¶ 44.)

Sibel Ozbek ("Ozbek"), an "Assistant Landscape Architect" employed by the City, was the overall "project manager" for the Project. (Dkt. 50−2 at 6−7, 13; *see* Pl. St. ¶¶ 8, 17.) Ozbek was not present at the Project work sites on a day−to−day basis, but received reports from the "resident engineer" when a problem arose or if a change became necessary at a work site. (Dkt. 50−2 at 19−20, 44−45.) Hill, and its on−site employee, Keith Stapleton ("Stapleton"), filled the role characterized by the City as the "resident engineer." (Hill St. ¶ 7; *see* Pl. St. ¶¶ 5, 38.) Stapleton's function included inspecting work at the Project work sites and maintaining daily reports on the work performed for payment purposes. (Dkt. 50−21 at 16−18, 33; *see* Pl. St. ¶¶ 9−10, 40.) Stapleton was present at the Grand Army Plaza work site on the day of DiIeso's accident. (Dkt. 50−21 at 11.)

The Project plans originally did not call for the use of manhole rings at the Grand Army Plaza work site. After beginning the work, Olson, however, suggested using the rings as a "field change." Stapleton communicated Olson's recommendation to Ozbek, who approved the use of manhole rings at the work site. (Pl. St. ¶ 11; Dkt. 50−21 at 66−67.)

DiIeso's accident occurred on October 17, 2011. (Hill St. ¶¶ 15−16; Pl. St. ¶ 48.) DiIeso and a co−worker were unloading four steel manhole rings from the bed of an Olson box truck. (Hill St. ¶ 16; Pl. St. ¶ 45−47.) The bed of the truck was thirty−four inches from the ground. (Pl. St. ¶ 47.) Each of the rings was approximately three feet around, eight inches thick, and weighed around 250 pounds. (*Id.* ¶ 46.) According to DiIeso, there was no machine available at the site to help unload the rings. (*Id.* ¶¶ 48, 51.) As DiIeso stepped down from the truck while holding the ring close to his body, his foot slipped off the bumper and he "came down on [his] right leg." (*Id.* ¶ 51 (quoting Dkt. 50-11 at 74).) DiIeso fell on his right side and felt an "explosion" in his back. (*Id.* ¶ 52 (quoting Dkt. 50-11 at 80).)

## DISCUSSION

### I. Summary Judgment Legal Standard

The Court focuses primarily on Hill's motion for summary judgment. Summary judgment is proper only when, construing the evidence in the light most favorable to the non−movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* Because Plaintiffs, as the non−moving party, have the "burden of proof at trial" on his claim, Hill's ability to satisfy this standard as to any "essential element" of a claim "necessarily renders all other facts immaterial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and entitles Hill to summary judgment.

In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir.2003) (citation and quotation omitted). The non−moving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quotations and citations omitted). That party must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted).

## II. Labor Law § 240(1)

Labor Law § 240(1), often called the "scaffold law," requires owners, contractors, and their agents to "furnish or erect, or cause to be furnished or erected . . . scaffolding . . . and other devices . . . as to give proper protection to" workers at construction sites.[5] The law's purpose "is to protect workers and to impose the responsibility for safety practices on those best situated to bear that responsibility." *Ross v. Curtis−Palmer Hydro−Elec. Co.*, 81 N.Y.2d 494, 500, 618 N.E.2d 82 (N.Y. 1993) (citation omitted). Courts in New York have applied § 240(1) to protect workers from the "significant risk inherent in [a] particular task because of the relative elevation at which the task must be performed or at which the materials or loads must be positioned or secured." *See Rocovich v. Consol. Edison Co.*, 78 N.Y.2d 509, 514, 583 N.E.2d 932 (N.Y. 1991).

Although the New York Court of Appeals has recognized that § 240(1) "is to be construed as liberally as may be [necessary] for the accomplishment of the purpose for which it was thus framed," *Rocovich*, 78 N.Y.2d at 513 (citation and internal quotations omitted), the statute only imposes liability on a limited class of entities, *see Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 318, 429 N.E.2d 805 (N.Y. 1981). By its terms, § 240(1) applies only to "contractors and owners and their agents[.]" Here, Plaintiffs seek to impose liability on Hill

---

[5] Section 240(1) states, in relevant part:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Lab. Law § 240(1).

under § 240(1) as an "agent" of the City chargeable with the duty to ensure safe conditions at the Project work sites, or, in the alternative, as a "contractor." (Dkt 54−2 ("Pl. Mem.") at 5−8.) As detailed below, Plaintiffs' ability to recover turns on whether Hill had the requisite authority to supervise or control DiIeso's work.

A. Hill Was Not an Agent Under § 240(1)

To hold Hill liable under § 240(1) as the City's agent, there must be a showing that Hill had "supervisory control and authority over the work being done when the plaintiff [was] injured[.]" *Walls v. Turner Const. Co.*, 4 N.Y.3d 861, 864, 831 N.E.2d 408, 410 (N.Y. 2005) (citing *Blake v. Neighborhood Hous. Servs. of N.Y. City*, 1 N.Y.3d 280, 293 (2003)); *see also Russin*, 54 N.Y.2d at 318 ("[o]nly upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under section[] 240"). "Although a construction manager of a work site is generally *not* responsible for injuries under Labor Law § 240(1)," a manager may become "liable as an agent . . . where the manager had *the ability to control the activity which brought about the injury*." *Walls*, 831 N.E.2d at 410 (emphasis added); *see Guclu v. 900 Eighth Ave. Condo., LLC*, 916 N.Y.S.2d 147, 148 (N.Y. App. Div. 2011) (same); *Kindlon v. Schoharie Cent. Sch. Dist.*, 887 N.Y.S.2d 310, 311 (N.Y. App. Div. 2009) (a construction manager is not liable as an agent unless the manager "ha[d] the authority to direct, supervise or control the work which brought about the injury").

After careful consideration of the record and Plaintiffs' arguments, the Court concludes that Plaintiffs have failed to raise a triable issue of fact as to whether Hill had supervisory control and authority over the work that gave rise to DiIeso's injury.

Plaintiffs assert that Hill stood in the City's shoes at the Project work site "to control, make decisions and[] . . . ensure that the goals and agenda were fulfilled in a safe manner." (Pl.

7

Mem. at 3.) Yet this characterization of Hill's role runs counter to the plain terms of the Hill Contract, which expressly delineates that Hill was *not* responsible for decisions on how the work required by the Project was to be accomplished. The contract specifies that "[i]t is the responsibility of the construction contractor [Olson], *and not the responsibility of the Consultant* [Hill], to determine the Means and Methods of Construction[.]" (Hill Contract at HI00026 (emphasis added).)[6] The contract thus unambiguously provides that choices regarding the means and methods for completing the work on the Project were solely the responsibility of Olson as the contractor.

Although Plaintiffs acknowledge that Olson was responsible for the means and methods of construction (*see* Dkt. 54 (Affirmation of Michael Santo, Esq., dated July 28, 2014 ("Santo Aff.") at 2), they nevertheless claim that Hill was "ultimately responsible for the site safety of all workers present[]" (Pl. Mem. at 4) because the Hill Contract provides that if the means and methods selected by Olson pose a safety hazard, "such means and methods *must be reported* to the Commissioner prior to implementation." (Hill Contract at HI00026 (emphasis added).) This provision, however, simply directs Hill to report to the City Olson's selection of unsafe means

---

[6] The provision states, in relevant part:

> It is the responsibility of the construction contractor [Olson], *and not the responsibility of the Consultant* [Hill], to determine the Means and Methods of Construction, as defined in . . . the construction contract documents. However, if the means and methods of construction proposed by the construction contractor will constitute or create a hazard to the work, or to persons or property, or will not produce finished work in accordance with the terms of the construction contract, such means and methods *must be reported to the [City] Commissioner* prior to implementation of same at the construction site

(Hill Contract at HI00026 (emphasis added).) The "**Means and Methods of Construction**," as defined in the Olson Contract, denotes "labor, materials, temporary structures, tools, plant, and construction equipment, and the manner and time of their use, necessary to accomplish the result intended by this Contract." (Olson Contract at 49.)

8

and methods of completing the work. Far from granting Hill the authority to dictate safety practices or prevent unsafe practices at the Project work site, this provision limited Hill's authority to advising the City if it believed that Olson was performing the work in an unsafe manner.

Similarly, the provision in the Hill Contract that requires Hill to, *inter alia*, "[m]onitor the [w]ork of [the] Contractor" and "*advise*" the City to "reject any work" that does not comply with specifications or "stop the [w]ork" (Hill Contract at HI000029−30)[7] does not, as Plaintiffs

---

[7] Under this section, Hill agreed to "[p]rovide resident, consulting services," including:

> (a) Provide daily reports containing a record of weather, work accomplished by Contractors, specific problems encountered by Contractors, and manpower . . .;
>
> (b) Supervise on-site coordination of the Work by and among the General or Prime Contractors;
>
> (c) Monitor the Work of each Contractor and recommend courses of action to non-resident Consultant personnel who shall recommend to Owner when a Contractor is not fulfilling its obligations or when other circumstances develop which adversely affect (or threaten to affect) the Work and/or progress thereof. To this end, *Consultant shall advise Owner* promptly, based on Consultant's knowledge, information, and field observation;
>
>> (i) to reject any Work (or any portion thereof) which does not comply with the requirements of the applicable Contract Documents;
>> (ii) to stop the Work (or any portion thereof) of any Contractor or other firm, for any period necessary, whether for inspection and testing, correction of the Work, emergency or for any other applicable reason . . . .
>
> *If and after Owner approves any course of action affecting the Work, whether involving rejection of the Work, stopping of the Work*, termination of a contract or any other matter pertaining to the Work, Consultant shall, as Agent for the owner, implement or require the Contractors to implement, the specified course of action.

(Hill Contract at HI000029−30 (emphasis added).) Although the Court notes that the term "Agent" appears in this provision, the use of the term alone does not control whether Hill can be considered an agent within the meaning of § 240(1), which focuses on whether Hill had the authority to direct, supervise or control the work which brought about DiIeso's injury. As discussed herein, Hill did not have such authority.

9

contend, show that "Hill inspectors were granted authority under the contract to stop any work at any time" (Pl. Mem. at 6.) To the contrary, the provision merely authorizes Hill to report to and advise the City of unsafe practices by Olson, and then implement any action approved by the City. Hill did not have unilateral authority to implement actions at the Project work sites.

In *Kindlon*, a New York appellate court addressed a substantially similar contractual framework and found that the construction management company did not have requisite authority to direct or control the work to be deemed a statutory agent of the City under § 240(1). 887 N.Y.S.2d at 311. The contract at issue in *Kindlon* contained a provision similar to the Hill Contract, specifying that the construction management company "shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work of each of the Contractors, since these are solely the Contractors'[] responsibility." *Id.* In addition, deposition testimony obtained from a superintendent of the management company involved in *Kindlon* suggested that "the only way for [the construction management company] to correct safety violations was to inform the prime contractor, who would then address the problem; [the construction management company] could not itself direct or control safety matters or the work which could lead to injury." *Id.*

Just as in *Kindlon*, Hill was not authorized to direct the means and methods used by Olson to complete the required work under the Project. Nor was Hill authorized by the City to insist that safe practices be followed at the work site. *Cf. Bakhtadze v. Riddle*, 868 N.Y.S.2d 684, 686 (N.Y. App. Div. 2008) (plaintiff made a showing that subcontractor had the requisite authority to supervise and control the work where there was deposition testimony that the general contractor and owner "relied on [the subcontractor] to provide necessary equipment and 'do

everything that was required'" to complete the work); *Pino v. Irvington Union Free Sch. Dist.*, 843 N.Y.S.2d 133, 135 (N.Y. App. Div. 2007) (construction manager failed to show that it lacked the requisite authority to supervise and control plaintiff's work where it had a contractual responsibility to "demand compliance" with safety requirements and stop work upon detecting unsafe practices or conditions).

The remaining contractual provisions cited by Plaintiffs demonstrate nothing more than the uncontested fact that the City retained Hill to inspect Olson's work to ensure that Olson's performance conformed to the Project's specifications. (*See* Santo Aff. at 2−3.)[8] Indeed, in *Conti v. Pettibone Companies, Inc.*, 445 N.Y.S.2d 943, 949 (N.Y. Sup. Ct. 1981), a New York Supreme Court found that such inspection functions were insufficient to impose liability on an alleged agent. The court in *Conti* found that liability could not be imposed on a "resident engineer" based on a contract requiring the engineer "to assure the owner that construction at the project complied with approved plans and specifications." *Id.* The court reasoned that liability

---

[8] Specifically, Plaintiffs point to contractual provisions stating that:

- "the City desires to retain the services of the Consultant [Hill] to Provide Construction Project Management Services as needed for the Supervision of [the] proposed improvements" (Hill Contract at HI000016)
- Hill "agrees . . . to assure that the completed construction conforms in all respects to the plans, specifications and requirements of the contracts as designed . . ." (*Id.* at HI000026).
- "[t]he Consultant [Hill] shall be the representative of the Agency [City] at the site and, subject to review by the [City] Commissioner . . ., shall have the power, in the first instance, to inspect the performance of the work. . ." (*Id.*).
- "[i]t shall be the responsibility of the construction contractor [Olson] to accomplish the work in accordance with pre-established construction schedules. The Consultant [Hill], however, shall advise the Commissioner when a contractor's [Olson's] progress falls behind . . . . [and] notify the contractor [Olson] and the Commissioner of any unwarranted or unexplained delays" (*Id.* at HI000027.)

(*See* Santo Aff. at 2−3.)

11

on an engineer "whose sole contractual duty was to perform limited specified inspectional functions for the owner, (even if some were quasi supervisory), would be wholly violative of the legislative intent and purpose of the contract[.]" *Id.* Here, Hill's obligation under its consulting contract to inspect the work site and ensure that the Project was carried out in accordance with specifications raises no issue of fact as to its liability under § 240(1). *See also Hutchinson v. City of New York*, 795 N.Y.S.2d 554, 555 (N.Y. App. Div. 2005) (contractual obligation to inspect work of the contractor did not raise an issue of fact as to statutory agency).

Plaintiffs also have not raised a triable issue of fact on Hill's authority to control the work that caused DiIeso's accident. On this issue, Plaintiffs rely on the deposition testimony of various Olson and Hill officers and employees. Much of this testimony, however, simply confirms that Hill ensured that the work at the Grand Army Plaza work site was being completed according to the Project's specifications.[9] Moreover, none of the deposition testimony cited by

---

[9] For example, Plaintiffs cite the deposition testimony of Donald Olson, Olson's President, that Hill supervised "[q]uantities" and "items[,]"along with ensuring that excavations were of sufficient depth, that the right amount and type of plants were planted. (Pl. St. ¶ 34;Dkt. 50-5 at 49.) Donald Olson also testified that the City, and not Hill, had "authority over the types of products used" (Dkt. 50-5 at 16) and that Hill did not provide any tools or equipment, including safety equipment, to any of Olson's employees (*id.* at 49). He further explained that he worked with Stapleton to ensure that Olson's work agreed with the Project's specifications so that Olson could get payment. (*See id.* at 15.)

With respect to Stapleton's role at the Project work site, Plaintiffs cite to DiIeso's testimony that Stapleton "did every aspect of the job as far as approving material. He dictated the whole job . . . as far as what we [Olson's on-site workers] were able to do, what we were allowed to do, what material we were able to use." (Pl. St. 39 (citing Dkt. 50-11 at 88).) This is insufficient to raise a material issue of fact on Hill's control over the work that caused DiIeso's injury. First, DiIeso also explained that the inspector's role was to ensure that the job was finished "correctly without any glitches throughout the process of doing the job." (Dkt. 50-11 at 23.) Moreover, as noted above, DiIeso admits that neither Stapleton nor anyone at Hill instructed him on how the rings would be delivered or taken off the truck. (*See* Dkt. 50-12 at 129.) DiIeso further testified that he did not recall anyone from Hill ever telling him what machine to use, or what means he should employ to load or unload material. (*Id.* at 149-50.)

Plaintiffs suggests that either Hill or its on−site employee, Stapleton, had the authority to control the particular work DiIeso was engaged in at the time of his injury − namely, unloading the manhole rings from the truck. To the contrary, DiIeso testified that he did not receive any direction from Hill as to how the rings were to be delivered from the truck, and that he and his co−worker determined, on their own, how they were going to accomplish this task. (Dkt. 50−12 at 129.) Indeed, Plaintiffs acknowledge that "Hill exercised no supervisory control over the specific operation of [Olson], and . . . specifically, [DiIeso's] and his co-worker[']s method of unloading the [rings] from the truck[.]" (Pl. Mem. at 12.)

At best, the testimony cited by Plaintiffs suggest that Hill had a role in obtaining *City* approval for the use of the manhole rings that ultimately led to DiIeso's injury. (*See* Pl. Mem. at 3.) Stapleton's deposition testimony suggests that Olson recommended the use of the manhole rings, and that Stapleton presented the suggestion to Ozbek, who approved the use of the rings. (Dkt. 50−21 at 66−67.) However, facilitating approval from the City for Olson's use of the manhole rings is a far cry from supervising the handling and unloading of those rings by Olson's employees, and particularly DiIeso.[10]

Since Plaintiffs have raised no facts on which a reasonable juror could find that Hill had supervisory control or authority over the work being done when DiIeso was injured, the Court finds as a matter of law that Hill was not an agent of the City for purposes of § 240(1).

---

[10] Plaintiff's attempt to raise an issue of fact based on Ozbek's testimony that Stapleton had "rejection power" as to the means and methods of the construction proposed by Olson is also unavailing. (*See* Pl. St. ¶ 36 (citing Dkt. 50-2 at 41).) Ozbek explained at her deposition that the resident engineer could reject material that was not "what the[ Contractor] promised to bring and provide" according to the Project's specifications. (*See* Dkt. 50-2 at 55−56.) Ozbek also testified that the resident engineer reported problems and changes to the City for Ozbek's approval. (*Id.* at 19−20, 45.) Thus, considered in context, Ozbek's statement does not suggest that Stapleton had authority or responsibilities beyond those specified in the Hill Contract.

B. Hill Was Not a Contractor Under § 240(1)

Plaintiffs also contend, albeit with lesser force, that Hill is liable under § 240(1) as a contractor. (Pl. Mem. at 7.) For Hill to be considered a contractor under § 240(1), there must be a showing that Hill had "the authority to enforce safety standards and choose responsible subcontractors[.]" *Williams v. Dover Home Improvement, Inc.*, 714 N.Y.S.2d 318, 319 (N.Y. App. Div. 2000) (citation omitted); *accord Futo v. Brescia Bldg. Co.*, 755 N.Y.S.2d 125, 127 (N.Y. App. Div. 2003). "The determinative factor is whether the party had 'the *right* to exercise control over the work, not whether it actually exercised that right[.]'" *Bakhtadze*, 868 N.Y.S.2d at 590 (quoting *Williams*, 714 N.Y.S. at 319) (emphasis added). Thus, as Plaintiffs acknowledge (*see* Pl. Mem. at 7), Hill's status as a contractor turns on the terms of Hill's contract with the City. "The key criterion is 'the right to insist that proper safety practices were followed and it is the right to control the work that is significant, not the actual exercise or nonexercise of control[.]'" *Nowak v. Smith & Mahoney, P.C.*, 494 N.Y.S.2d 449, 451 (N.Y. App. Div. 1985) (quoting *Copertino v. Ward*, 473 N.Y.S.2d 494, 497 (N.Y. App. Div. 1984)). Hill had no such authority. As discussed above, under Hill's contract with the City, Hill was not responsible for determining the means and methods of construction, and its authority with respect to safety matters was limited to reporting potentially hazardous conditions to the City. Hill accordingly cannot be considered a contractor under § 240(1). *See id.* (defendant was not a contractor because it "was never in a position to direct, supervise or enforce safety measures in the performance of the electrical prime contract").

In sum, because Hill is not a proper defendant under § 240(1) as an agent of the City or as a contractor, the Court grants Hill's motion for summary judgment on Plaintiffs' § 240(1) cause of action.[11]

### III. Plaintiffs' Common Law Claims

As previously noted, Plaintiffs have withdrawn their Labor Law § 200 claim, alleging negligence by Hill. *See supra* at 2. Since Labor Law § 200 is a codification of the common law negligence cause of action, the Court deems Plaintiffs as having withdrawn their common law negligence claim as well. *See Jock v. Fien*, 80 N.Y.2d 965, 967, 605 N.E.2d 365 (N.Y. 1992); *see also Portillo v. Roby Anne Dev., LLC*, 819 N.Y.S.2d 566 (N.Y. App. Div. 2006) (finding that a grant of summary judgment on a cause of action premised on § 200 in effect also dismissed a common law negligence claim). In any event, since Hill did not exercise any supervision or control over DiIeso's work as discussed above, Plaintiffs' common law negligence claim would also be dismissed on the merits. *See Cun−En Lin v. Holy Family Monuments*, 796 N.Y.S.2d 684, 686 (N.Y. App. Div. 2005) (there can be "no liability under the common−law or Labor Law § 200 unless the owner or general contractor exercised supervision or control over the work performed"); *Hutchinson*, 795 N.Y.S.2d at 555 (common−law negligence and Labor Law § 200 claims should have been dismissed because defendant "did not exercise any actual supervision or control over the work the [plaintiff] was performing").

Plaintiff Annette DiIeso's derivative claim for loss of consortium must also dismissed. Under New York common law, a claim for loss of consortium "is a derivative action that depends on the viability of the primary cause of action," which, in this case, is her husband's

---

[11] The Court thus declines to address Hill's and Olson's remaining contentions regarding the applicability of § 240(1), including their claim that Plaintiff's accident is not the type of incident within the purview of § 240(1). (*See, e.g.*, Dkt. 63-4 at 9-10, 12.)

Labor Law § 240(1) claim.  *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011); *see Milam v. Herrlin*, 819 F. Supp. 295, 306 (S.D.N.Y. 1993) (loss of consortium claim does not exist "independent of the injured spouse's right to maintain an action for injuries sustained") (citation and internal quotation marks omitted).  Thus, because the Court has dismissed this claim, as well as his common law negligence claim, the Court must also dismiss Plaintiff Annette DiIeso's loss of consortium claim.

## *CONCLUSION*

Accordingly, Hill's motion for summary judgment is granted on Plaintiffs' Labor Law § 240 (1) cause of action and any remaining common law causes of action.  All of Plaintiffs' claims therefore are dismissed with prejudice.  Since no claim remains against Hill, Hill's claim for indemnification against Third−Party Defendant Olson is also dismissed, and Olson's summary judgment motion is denied as moot.  The Clerk of Court is respectfully requested to close this case.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: March 30, 2015
      Brooklyn, New York